**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MICHAEL A. PRYOR**
d/b/a APRYOR TRANSPORT LLC                                                                      **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO.: 3:23-cv-309-DMB-JMV**

**CITY OF PONTOTOC POLICE DEPARTMENT et al.**                                **DEFENDANTS**

### REPORT AND RECOMMENDATION ON SHOW CAUSE ORDER [4]

This matter is before the court for report and recommendation following a show cause order [4] dated August 18, 2023. It is my report that Plaintiff's *pro se* complaint [1] filed August 14, 2023, and supplemented [6] on August 28, 2023, fails to state facts giving rise to a colorable claim[1] and/or states claims that are frivolous[2] in violation of 28 U.S.C. § 1915.[3] Nevertheless, as explained below in more detail, because of Plaintiff's *pro se* status, I recommend that with respect to all but the most legally futile of his claims – his state law claim for tortious

---

[1] Under the standard, the Court asks whether the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] A claim is "frivolous" when, objectively speaking, the pleader or movant has no hope of success. *Mark S. Bounds Realty Partners, Inc. v. Lawrence*, 34 So. 3d 1224 (Miss. Ct. App. 2010).
[3] Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal –
        (i) In order to proceed *in forma pauperis* in federal court, in addition to meeting the financial prerequisites, a plaintiff must establish that he has not raised a frivolous or malicious claim or a claim that fails to state a claim on which relief may be granted. The applicable standard is found in 28 U.S.C. § 1915(e)(2), which applies equally to prisoner and nonprisoner *in forma pauperis* cases. *See Newsome v. Equal Employment Opportunity Commission,* 301 F.3d 227, 231-33 (5th Cir. 2002) (affirming dismissal of nonprisoner claims for frivolity and failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). The statute providesis frivolous or malicious;
        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.
28 U.S.C. § 1915(e)(2).

interference with contract and those against the State of Mississippi, the City of Pontotoc Police Department, and the Pontotoc County Sheriff's Department – he be given one further opportunity[4] to further amend his complaint to address the concerns raised herein.

### I. Procedural Status

The *pro se* plaintiff filed the instant motion to proceed IFP on August 14, 2023, along with his Complaint [1] filed the same day. In the complaint, he names as Defendants to the action the following: the State of Mississippi; the Pontotoc Police Department; the Pontotoc Sheriff's Department; Nathan Gregory, an investigator with the Pontotoc Police Department; Chance Austin, also an investigator with the Pontotoc Police Department; Lynn Fitch, formerly District Attorney for Pontotoc (now State Attorney General); Randy Tutor, Chief of Police of the Pontotoc Police Department; Leo Mask, Sheriff of Pontotoc County; Greg Brown, Municipal Court Judge in Pontotoc; and Malinda Nowicki, Circuit Clerk. Plaintiff asserts the following causes of action in the instant case: three (3) claims for constitutional violations pursuant to 42 U.S.C. § 1983 – procedural due process, illegal search and seizure, and false arrest – and a state law claim for tortious interference with contract.

For the sake of completeness, the entirety of the factual allegations as asserted by Plaintiff are as follows:

---

[4] My August 18, 2023, Order to Show Cause [4] advised Plaintiff that it was unclear what specifically each defendant is alleged to have done or failed to do in violation of his rights and directing him to provide this information in the form of a response to the SCO. Thereafter on August 28, 2023, Plaintiff filed a document styled amended complaint [6]; however, it is largely a duplicate copy of his original complaint. The lone differences in this "amended complaint" are as follows: Circuit Clerk Malinda Nowicki is named as an additional defendant in Section III.C; under the false arrest claim, Plaintiff adds an allegation that "Circuit Clerk Malinda Nowicki signed and falsified the arrest warrant"; and an additional page listing documents is provided.

(1) July 22, 2019 Investigator Nathan Gregory called Plaintiff phone threatening Plaintiff to take his load of furniture to Fusion Furniture.

(2) July 22, 2019 Investigator Nathan Gregory and Investigator Austin Chance went to Plaintiff residence.

(3) On July 22, 2019 Investigator Nathan Gregory told Plaintiff that Mike Hatfield from J.B. Hunt Transport Services, Inc called him to report fictious theft of the cargo in Plaintiff possession.

(4) On July 22, 2019 I told Investigator Nathan Gregory that the load at question had been rejected at the Reciever in Smitton, PA on July 17, 2019.

(5) On July 22, 2019 Plaintiff to Nathan Gregory that JB Hunt agreed to pay charges to bring the load back to Fusion Furniture.

(6) On July 22, 2019 Plaintiff told Nathan Gregory that he had a copy of the Rejected Bill of Lading.   (cont.) next page

(7) On July 22, 2019 Nathan Gregory refused to see any evidence that the Plaintiff had.

(8) On July 22, 2019 the Plaintiff told Nathan Gregory that he had legal possession of the cargo under Federal Regulation UCC 11-7-307, & UCC 11-7-308

(9) On July 22, 2019 Nathan Gregory told Plaintiff that he cannot legally hold possession of the cargo without a judgement from a judge.

(10) On July 26, 2019 Nathan Gregory said J.B. Hunt Employee contacted him and told him Plaintiff had disposed of the load of furniture.

(11) On July 23, 2019 the Plaintiff put the load of furniture in storage.

(12) The reason the load was rejected on July 17, 2019 was because the load Plaintiff had valued $49,322.21 see Bill of lading.

(13) The load in question valued at $20,756 see Investigator Nathan Gregory statement.

(14) On August 5, 2019 Greg Ferguson Employee of Fusion Furniture contacted Investigator Chance Austin about the Plaintiff Post on Letgo.com.

(15) On Aug. 12, 2019 Chance Austin obtained a warrant for the Plaintiff At&t Wifi. See house Bill 608

(16) Investigator Nathan Gregory told the Plaintiff that he had witness statement and video.

(17) On or around Sept. 11, 2019 Nathan Gregory called (Cont.) →

plaintiff to tell him that he is under arrest for Embezzlement.

18) On or around Sept. 11, 2019 the Plaintiff called District Attorney Lynn Fitch to tell her that the Plaintiff has not been given a fair and equal investigation to prove his innocence.

19) Lynn Fitch stated the I would have to prove that to the Court.

20) On or Around Sept. 11, 2019 the Plaintiff called Chief of Police Randy Tutor to enform him that the Plaintiff was not given a fair Investigation and that the Plaintiff got proof of his innocence.

21) On or around Sept. 11 2019 Randy Tutor told the Plaintiff that it was too late.

22) On or around Sept. 13 2019 upon arrival from a trip the Plaintiff surrendered himself to the possession of Pontotoc Police Department.

23) Plaintiff told Nathan Gregory that he was still in Possession of the cargo at question.

24) Investigator Nathan Gregory still Refused to accept defendent evidence.

25) August 9, 2021 Embazzelment charges are Retired to the file due to the Defendent objects to contest.

26) August 18, 2022 Embazzelment charges were exspunged.

27) I told officer Nathan Gregory that the cargo is under contract that is applicable, see 49 USC 14706.

IV. Statement of claim

(B) Tortious interference with a contract
1. Nathan Gregory, Chance Austin, Randy Tutor, and Lynn Fitch were all aware that a contract existed between Apryor Transport LLC. and J B Hunt Transport Services, INC. see Sypnosis Report
2. Nathan Gregory and Judge Greg Brown ignored the contract. See Nathan Gregory Sypnosis Report
3. Nathan Gregory demanded the Plaintiff to give up his Rights of possession on several times between the dates of July 22, 2019 - July 30, 2019 by phone. Also see Officer Nathan Gregory stated in his Sypnosis Report
4. Both Investigators Nathan Gregory and Austin Chance used tampred evidence for evidence to make the prosecution

Illegal Search and Seizure
① Illegal search warrant signed by Municipal Judge Greg Br
See House Bill 608 Judiciary B
Municipal Judge only handle misdemenor cases.

False arrest
(A) Arrest Warrant says "Capias" clearly does not fit plaintiff.
(B) No signature on Arrest Warrant see Miss. R. Crim. P. 3.6
(C) Circuit Clerk Malinda Nowicki signed and falsified the Arrest warrant

Deprivement of Rights
① Officer Nathan Gregory admitted that I told him I had a legal right of possession see Board of Regents, v. Roth 408 U.S. 564, 578, 92 S. CT. 2701, 2707, 33 L. ED. 2d (1972).

## II. Analysis

### a. The State Law Claim for Tortious Interference with Contract

When the face of an IFP complaint clearly shows that the claims asserted are barred by the applicable statute of limitations, dismissal under § 1915 is proper. *Gonzales v. Wyatt,* 157 F.3d 1016, 1019-20 (5th Cir.1998); *Garrett v. Anderson*, 254 F.3d 1081 (5th Cir. 2001); *Washington v. Texas Dep't of Crim. Just.*, 653 F. App'x 370, 371 (5th Cir. 2016). Plaintiff alleges APryor Transport LLC and JB Hunt Transport Services Inc. were parties to a contract and that, in 2019, all of the individual defendants tortiously interfered with that contract. The statute of limitations for the state law claim of tortious interference with contract is three (3) years. *See Wertz v. Ingalls Shipbuilding Inc.*, 790 So.2d 841, 845 (Miss. Ct. App. 2000) (citing Miss. Code Ann. § 15-1-49). This claim was not filed until August 2023 and is therefore untimely. Moreover, Plaintiff has no standing to assert a claim for tortious interference with the aforementioned contract because he is not a party to that contract. *See, e.g., Chain v. Gen. Am. Life Ins. Co.*, No. 4:96CV96-B-B, 1996 WL 408914, at *2 (N.D. Miss. July 5, 1996) (citations omitted).

### b. The State of Mississippi

The Plaintiff's federal claims, to the extent any have been asserted, against the State[5] are due to be dismissed as it is immune from suit for violation of such claims.

The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

---

[5] Although the State of Mississippi is listed as a defendant, no particular cause of action or facts in support thereof is alleged with regard to it.

U.S. Const. Amend. XI.  Although the terms of the Eleventh Amendment nominally apply only to suits by "Citizens of another State," Supreme Court decisions have made clear that a State's immunity encompasses "suits by citizens against their own States." *See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 351 U.S. 345, 363 (1956) (citations omitted); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15(1890). That is to say, the Eleventh Amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363.

While Eleventh Amendment immunity may be abrogated by Congress or waived by the State, neither has occurred in this case.  "There has been no Congressional abrogation of state sovereign immunity as to claims under § 1981, 1983, 1985 or 1986." *Delaney v. Miss Dep't of Public Safety*, No. 3:12cv229, 2013 WL 286365, at *3 (S.D.Miss. Jan. 24, 2013) (citing *Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000)). Neither has the State waived its own immunity from liability regarding 42 U.S.C. §1983. In the Fifth Circuit, a state waives Eleventh Amendment immunity "either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005). Here, the State has not invoked federal court jurisdiction. "Further, the State of Mississippi has not waived its sovereign immunity from liability in suits arising under §§ 1983 1985 or 1986." *Delaney*, No. 3:12CV229TSL-MTP, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013), *aff'd,* 554 F. App'x 279 (5th Cir. 2014) (holding that the MTCA expressly reserves immunity from such suits).

In addition to the Eleventh Amendment's bar as to the Plaintiff's § 1983 claims, those claims are likewise precluded because the State is not a "person" within the meaning of § 1983 which provides in pertinent part:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (emphasis added).

Generally, liability will attach where a plaintiff can prove that an official (1) acted "under color of" law, and (2) the official's actions deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal law. *Monroe v. Pape,* 365 U.S. 167, 171 (1961), o*verruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). The United States Supreme Court, however, has held that the State, arms of the State, and state officials sued in their official capacity are not "persons" within the meaning of Section 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Based on the Supreme Court's holding in *Will*, the State is not a "person" within the meaning of Section 1983 and thus, is not amenable to suit. Plaintiff's § 1983 claims against the State cannot survive this motion to dismiss.

The State is also immune from Plaintiff's state law tort claims, if any. As declared by the Supreme Court in *Pennhurst State Sch. & Hosp. v. Halderman*:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result

> conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The Eleventh Amendment deprives a federal court of jurisdiction to hear a suit against the State unless sovereign immunity is expressly waived, which has not been done in this case. *See Pennhurst State School & Hosp.*, 465 U.S. at 100–02 (holding that a claim that state officials violated state law in carrying out their official duties is a claim against the State that is protected by the Eleventh Amendment, a principle that applies to "state-law claims brought into federal court under pendent jurisdiction"); *Planells v. San Francisco Unified Sch. Dist.*, 978 F.2d 715, at *4 (9th Cir. 1992) (relying on *Pennhurst* to assert that supplemental state law claims against a state officer sued in his official capacity cannot be maintained in federal court); *Laudman v. Padula*, No. CIV.A. 3:12-2382-SB, 2013 WL 5469977, at *6–7 (D.S.C. Sept. 30, 2013) (dismissing plaintiff's state law tort claims as barred under the Eleventh Amendment); *see also Nordgren v. Hafter*, 616 F. Supp. 742, 748 (S.D. Miss. 1985), *aff'd,* 789 F.2d 334 (5th Cir. 1986) (holding immunity extends to bar pendent state law claims); Miss. Code Ann. § 11-46-5(4) ("[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"). Consequently, allowing any of the Plaintiff's claims premised on a violation of state tort law to proceed in federal court would violate elementary principles of sovereign immunity. The State is immune from suit as to Plaintiff's state law tort claim and Plaintiff's claim against it should be dismissed.

### c. The City of Pontotoc Police Department and the Sheriff's Department

The capacity of a Police or Sheriff's Department to be sued is governed by state law. FED. R. CIV. P. 17(b)(3). Although the Mississippi Code authorizes suit against "[e]very municipality of this state[,]" it does not authorize suit against a municipality's police or sheriff's department. Miss. Code Ann. § 21-17-1(1); *Jackson v. City of Gulfport*, 2017 WL 651956, *2 (S.D. Miss. Feb. 16, 2017). In other words, such departments are not a separate legal entity that may be sued. *Id*; *Stovall v. City of Hattiesburg*, 2010 WL 1908313, a*1-2 (S.D. Miss. May 17, 2010). Consistent with this well-settled authority, I recommend that the City of Pontotoc Police Department and the Pontotoc Sheriff's Department lack the capacity to be sued, and therefore are not proper defendants.

### d. Lynn Fitch

The only facts alleged as to Lynn Fitch are these: she was aware, in 2019, that APryor Transport LLC and JB Hunt Transport Services Inc. had a contract, and on September 11, 2019, Plaintiff called Lynn Fitch, who was then the District Attorney, and told her that he had not been given "a fair and equal investigation to prove his innocence" and she said the plaintiff "would have to prove that in court." These allegations do not conceivably give rise to any recognized cause of action, let alone those arguably asserted here against Lynn Fitch for tortious interference of contract and procedural due process violations. Moreover, these facts are entirely insufficient to overcome the prosecutorial immunity from actions for § 1983 liability afforded to district attorneys for actions as officers of the court. *See Van de Kamp v. Goldstein*, 555 U.S. 335 (2009).

### e. Judge Greg Brown

According to the factual allegations in the complaint, Judge Greg Brown is a municipal judge who apparently signed the search warrant for Plaintiff's AT&T WiFi on August 12, 2019.

Citing House Bill 608, Plaintiff asserts the warrant was illegal because "municipal judge only handle misdemeanor cases." Judicial immunity is a longstanding, well-established principle. *See Mireles v. Waco,* 502 U.S. 9 (1991) (per curiam) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages.") (citation omitted); *Cleavinger v. Saxner,* 474 U.S. 193, 199 (1985) ("This Court has observed: 'Few doctrines were more solidly established at common law than the immunity of judges for liability for damages for acts committed within their judicial jurisdiction.'") (quoting *Pierson v. Ray,* 386 U.S. 547 (1967)). As a municipal judge, the municipal judge has jurisdiction over municipal criminal matters, including all misdemeanors. Miss.Code Ann. § 21–23–1 *et seq.* Title 21 of the Mississippi Code establishes the municipal courts and defines their jurisdiction. Miss.Code. Ann. § 21–23–7(1) states, in pertinent part:

> The municipal shall have the jurisdiction to hear and determine, without a jury and without a record of the testimony, all cases charging violations of the municipal ordinances and state misdemeanor laws made offenses against the municipality and to punish offenders therefor as may be prescribed by law.

Miss.Code. Ann. § 21–23–7(1).

The United States Supreme Court has held that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, *or was in excess of his authority;* rather, he will be subject to liability only when he has acted in the *clear absence of all* jurisdiction." *Id.* at 356–57 (citation omitted) (emphasis added); *see also Mireles,* 502 U.S. at 12–13 ("If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was ... in excess of his authority.") Indeed, in Birchfield v. State, 412 So. 2d 1181 (Miss. 1982), the court explained that the municipal court had authority to issue a warrant, despite the plaintiff's

contention that jurisdiction for issuance of the warrant rested exclusively with the circuit court. Birchfield, 412 So.2d at 1182-83 ("The appellant argues … the municipal judge who issued the warrant was without authority to do so. No authority is cited for this postulate and neither is it contended by the appellant that he was prejudiced by the warrant's issuance from a municipal judge instead of the circuit judge. Moreover, there is no contention the issuing judge was not a neutral and detached magistrate as required by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)."). Further, though persuasive authority only, the Mississippi Attorney General has similarly opined as follows: "[w]here the crime occurs within the municipal judge's jurisdiction, the Judge, being a conservator of the peace within the municipality, may issue felony arrest warrants and search warrants to be executed both inside and outside the municipal corporate limits." Op.Atty.Gen. Haltom, Nov. 27, 1989. Finally, while Plaintiff cites House Bill 608 to support his assertion that a municipal judge only has authority with respect to misdemeanors, it appears that 2023 Mississippi House Bill 608 actually concerns on-line voter registration.

    **f. Randy Tutor, Leo Mask, Malinda Nowicki, Nathan Gregory, and Chance Austin**

Not unlike the sparse allegations against Lynn Fitch, those asserted against Randy Tutor do not remotely state a colorable cause of action. The allegations against Randy Tutor amount only to an assertion that on September 11, 2019, Plaintiff called him, the chief of police, to inform him that Plaintiff was not given a fair investigation and that Plaintiff had proof of his innocence. Tutor is alleged to have responded that "it was too late."

Malinda Nowicki is not alleged to have taken any unlawful action in the fact portion of Plaintiff's amended complaint, but she is accused – in the statement of causes of action – to be responsible for Plaintiff's alleged false arrest on September 11, 2019, because she "signed and

falsified the arrest warrant." No facts are provided as to what false information she is alleged to have provided in the arrest warrant. This is precisely the type of conclusory allegation that is insufficient to state a cognizable claim against a defendant.

Similarly, though police investigators, Nathan Gregory and Chance Austin are alleged to have "used tampered evidence to make the prosecution" and no facts whatsoever are alleged in support of that assertion. Again, these are precisely the kind of conclusory allegations that do not suffice to give rise to a cognizable claim.

As for Sheriff Leo Mask, Plaintiff makes no factual allegations whatsoever. As such, there is no cognizable claim against this defendant.

### III. Conclusion

Based on the analysis above, I recommend that Plaintiff's complaint, as amended, be dismissed with respect to the following defendants and claims: the State of Mississippi, the City of Pontotoc Police Department, the County of Pontotoc Sheriff's Department, Judge Greg Brown, and the state law claim for tortious interference with contract in its entirety. However, given Plaintiff's *pro se* status, the undersigned recommends he be given an additional 30 days from the date of any order adopting in whole or in part this report and recommendation to file on the docket factual allegations to support the claims he is asserting against the individually named defendants (Randy Tutor, Nathan Gregory, Chance Austin, Lynn Fitch, Malinda Nowicki, and Leo Mask). Should the court so order, and the plaintiff then fail to satisfactorily do so in whole or in part, the undersigned will further recommend the dismissal of these additional defendants. At that time, should any claims or defendants remain, IFP status will be addressed.

### Procedure for Filing Objections

The plaintiff is referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within twenty-one (21) days of this date. Failure to timely file written objections to the proposed findings conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**Respectfully submitted**, this, the 8th day of November, 2023.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**