**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MICHAEL PRYOR**                                                                             **PLAINTIFF**

**v.**                                                                            **No. 3:23-cv-00309-MPM-JMV**

**CITY OF PONTOTOC**                                                         **DEFENDANT**

**ORDER**

This cause comes before this court on its own motion, pursuant to 28 U.S.C. § 1367(c), declining to exercise supplemental jurisdiction over *pro se* plaintiff Michael Pryor's remaining state law claims in this case. Plaintiff originally filed this action against a litany of defendants, asserting both federal and state claims arising out of his arrest for embezzlement. The relevant facts and procedural history in this regard are concisely set forth in defendant's brief, as follows:

> Plaintiff is the owner and operator of a freight shipping company named APryor Transport LLC. Am. Compl. [10] at 3. In July 2019, Plaintiff attempted to transport furniture pursuant to a contract entered into between the shipping company and J.B. Hunt Transport Services Inc. Am. Compl. [10] at 4–5. Upon arriving at his destination, the receiver of the goods "rejected" his shipment. *Id.* at 5.
> Sometime thereafter, an investigator from the Pontotoc Police Department received a complaint from J.B. Hunt regarding Plaintiff's unsuccessful shipment. *Id.* at 4. The investigator, in turn, contacted Plaintiff and instructed him to return the furniture to the receiver. *Id.* Plaintiff responded that he had a right to hold possession of the goods until he received payment from J.B. Hunt. *Id.* A few days later, Plaintiff stored the furniture in a storage unit. *Id.* at 5. Five days after that, the investigator again contacted Plaintiff and advised him to complete the shipment. *Id.* Plaintiff offered to show proof that he had the right to hold possession of the goods, but the investigator refused. *Id.*
> On or around September 9, 2019, the investigator called Plaintiff and advised him that he was under arrest for embezzlement. *Id.* Plaintiff alleges that he was arrested on September 11. *Id.*
> Against this backdrop, Plaintiff filed a pro se lawsuit against numerous defendants, under 42 U.S.C. § 1983, alleging federal constitutional violations and a single state law claim for tortious interference with contract. Compl. [1]. Following an order to show cause, and supplement to the complaint, this Court entered its report and recommendation, recommending the dismissal of defendants and claims but permitting Plaintiff thirty additional days to amend his complaint. Order to Show Cause [4]; Supplement to Compl. [6]; Report and Recommendation [7].

> Plaintiff filed his amended complaint twenty days later, solely against the City of Pontotoc. Am. Compl. [10]. In his amended complaint, Plaintiff re-raises his state law claim of tortious interference with contract and alleges a new state law claim of abuse of process. *Id.* The City answered the (operative) amended complaint on January 2, 2024. Answer [20]. The City now moves for judgment on the pleadings.

[36] at 1-2.

Defendant's recitation of the procedural history is correct, though this court would add that, on November 28, 2023, plaintiff did file limited objections to the Magistrate Judge's Report and Recommendation. [9] In that filing, plaintiff did not take issue with the vast majority of the Magistrate Judge's findings, including her finding that his federal claims lacked merit. *Id.* Rather, plaintiff maintained that his state law claims of tortious interference with contract and abuse of process against the City of Pontotoc were valid ones, and he filed an amended complaint asserting those claims.[1] [10]. In light of the filing of the amended complaint, the Magistrate Judge withdrew her R&R, since her recommendations had related to what had since become the non-operative complaint.

In a case such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this Court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that "courts should decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially

---

[1] This court notes that plaintiff did use a form document for his complaint which makes reference to § 1983, but he provided no substantive allegations of a breach of federal law and/or the U.S. Constitution consistent with an actual § 1983 claim.

2

predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The four § 1367(c) factors are thus listed in the disjunctive, which means that only one of them needs to be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction. Federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

In the court's view, the statutory factors, as well as the *Cohill* considerations, support declining to exercise supplemental jurisdiction in this case. In so concluding, this court notes at the outset that the proper resolution of plaintiff's state law claims is rendered more "complex" within the meaning of § 1367(c)(1) by the fact that neither side's briefing addresses what effect, if any, the provisions of the Mississippi Tort Claims Act (MTCA) have upon plaintiff's claims. As noted above, plaintiff asserts two tort claims against a Mississippi municipality, which clearly raises questions regarding the applicability of the MTCA. Moreover, there are serious questions in this court's mind regarding whether it is proper to assert a tortious interference with contract claim against a Mississippi municipality, as opposed to an individual defendant. In so stating, this court notes that, in *Beacham v. City of Brookhaven*, No. 5:22-cv-00065, 2023 WL 4918346, at *2-3 (S.D. Miss. Aug. 1, 2023), Judge Bramlette recently permitted a malicious interference claim to go forward outside the scope of the MTCA, but only against an individual defendant, and not against the municipal defendant.

This court further notes that there is a complex and somewhat conflicting history of case law regarding the effect of the MTCA on malicious interference claims, and the Mississippi Supreme Court discussed this history at some lengthy in its 2017 decision in *Springer v. Ausbern*

3

*Constr. Co.*, 231 So. 3d 980, 988 (Miss. 2017). While this court will not discuss this lengthy judicial history here, it does note that the Supreme Court held in *Springer* that:

> Tortious interference with a contract requires proof of malice as an essential element. As a result, Ausbern's claim for tortious interference with the road-construction contract against Springer in his individual capacity was not subject to the Tort Claims Act's presuit notice requirements. Ausbern's claim necessarily was brought against Springer individually for acts allegedly outside the scope of his employment, and the trial court properly denied Springer's motion to dismiss due to lack of presuit notice.

*Springer*, 231 So. 3d at 989 (citations omitted). The Supreme Court in *Springer* thus held that the tortious interference claims in that case were "necessarily" asserted against the individual defendant in his individual capacity, and this holding plainly raises questions which should be addressed by both sides before a court rules on the merits of plaintiff's tortious interference claims against the City of Pontotoc.

Given that this court is declining to exercise supplemental jurisdiction over plaintiff's two remaining state law claims, it would be improper for it to comment upon the substantive merits of those claims, since they may eventually be addressed by a state court. Suffice it to say, however, that this court does not believe that the Supreme Court's decision in *Springer* clarified all unsettled questions relating to the liability of municipalities and individual employees when confronted with malicious interference claims. Clearly, state courts are in a much better position to address any unsettled issues in this regard, since the Mississippi Supreme Court has the authority to actually create new law in this context, rather than merely making *Erie*-guesses in this regard. This case presents a particularly poor vehicle for this court to make *Erie*-guesses in this regard, since, if it chose to do so, it would essentially be arguing with itself, in the absence of any arguments from the parties on the MTCA issues.

In seeking dismissal, the City argues that the claims against it are barred by the general three-year statute of limitations set forth in Miss. Code Ann. § 15-1-49, but this court has serious

4

doubt as to whether it would be proper to consider the timeliness of plaintiff's claims in the context of that statute. In so stating, this court notes that the MTCA has its own one-year statute of limitations, *see* Miss. Code Ann. § 11-46-11(3), and, in its experience, tort claims against municipalities have always been addressed within the context of that Act. Indeed, this court notes that the default rule "outside" of the MTCA is one of absolute immunity on the part of the "state and its political subdivisions," *see* § 11-46-3(1), which is why it has always understood claims being asserted outside of the MTCA as involving ones against individual employees. As noted above, Judge Bramlette observed that the tortious interference claims in *Beachem* were directed solely against the individual defendant, which is certainly consistent with this court's understanding of the proper scope of claims asserted outside of the MTCA's provisions.

Moreover, while a one-year statute of limitations is, obviously, even more favorable to defendant than the three-year statute of limitations period upon which it relies, this court regards it as important to make its rulings based upon the law which is actually applicable in a case, after considering the arguments of both sides. In so stating, this court notes that MTCA actions have plaintiff-friendly aspects as well, including a rather liberal "discovery rule" applicable to its statute of limitations. *See Hood v. A & A Excavating Contractors, Inc.,* 338 So. 3d 145, 149 (Miss. Ct. App. 2022). That being the case, it would be wrong for this court to simply assume that plaintiff has no arguments to make under the MTCA, even assuming that its provisions are applicable here. Indeed, plaintiff had no reason to mention the MTCA in his response to the motion to dismiss, since defendant did not do so in its motion, and it would be unfair for this court to address the merits of the MTCA issues under these circumstances.

Fairness issues aside, this court believes that it would be unwise to address the merits of this case based on its own understanding of the MTCA's requirements when neither side's briefing

5

even addresses this Act, and, as such, this court might overlook something if it chose to follow its own analysis. In so stating, this court notes that even greater uncertainties arguably exist regarding the applicability of the MTCA to plaintiff's abuse of process claim, since courts appear to have reached differing conclusions in this regard. *See, e.g., Burroughs v. City of Laurel*, No. 2:19-cv-00048, 2019 WL 4228438, at *3 (S.D. Miss. Sept. 5, 2019); *Hagan v. Jackson Cnty.*, No. 1:13-cv-00268, 2014 WL 4914801, at *12-13 (S.D. Miss. Sept. 30, 2014). This court will not discuss this authority, since its goal is not to resolve these issues, but merely to note their complexity. This complexity plainly supports allowing Mississippi state courts to resolve these thorny issues, under the clear language of § 1367(c)(1). It thus seems particularly advisable to follow the "general rule" in this case and to decline to exercise supplemental jurisdiction over plaintiff's state law claims against the City of Pontotoc. This will allow the *pro* se plaintiff to carefully research the law in this context and determine whether he should re-file his remaining two state law claims in state court against the City. This approach will also allow defendant to address any MTCA-related issues in seeking dismissal of any claims which plaintiff may choose to assert in this regard.

In light of the foregoing, this court concludes that the first § 1367(c) factor, relating to the complexity of the law, supports declining to exercise supplemental jurisdiction over plaintiff's state law claims. Given that the § 1367(c) factors are written in the disjunctive, this court could validly stop at this point, but it will briefly note for the record that the other (c) factors are met as well. In particular, the (c)(2) factor is met, since plaintiff's state law claims "substantially predominates over the claim or claims over which the district court has original jurisdiction." Indeed, there *are* no claims over which this court has original jurisdiction in light of plaintiff's decision to file an amended complaint which dropped his federal claims. Moreover, by permitting

6

plaintiff to file this amended complaint, this court effectively "dismissed all claims over which it has original jurisdiction" within the meaning of (c)(3).

As a final point, this court observes that there is an additional consideration which constitutes "[an]other compelling reason[] for declining jurisdiction" under (c)(4) as well as a basis for abstaining on the grounds of comity under *Cohill*. This consideration arises from the fact that, as a case involving a municipal defendant, this action implicates the public coffers and taxpayer dollars in such a manner as to give rise to greater comity and federalism concerns than if purely private interests were at stake. This court believes that, since the taxpayers will eventually have to pay any judgment or increased insurance premiums arising from this case, it is proper that state courts rule upon the state law liability issues in it. Moreover, this court notes that it is dismissing this case at any early stage of the proceedings, which supports a finding that *Cohill*'s concerns regarding "judicial economy" do not present an obstacle in this case.

In light of the foregoing, this court concludes that all federal claims have effectively been dropped by plaintiff through the filing of his amended complaint, and it further concludes that it should decline to exercise supplemental jurisdiction over his remaining state law claims, and they will be dismissed without prejudice. Since plaintiff is proceeding *pro se*, this court will advise him that this means that he can still assert his two remaining state law claims raised in his amended complaint against the City, but he must do so in state court, within the time periods established by law. In this vein, this court notes that 28 U.S.C. § 1367(d) contains a tolling provision which provides that:

> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Thus, the time during which this matter was pending in federal court will not count against plaintiff as it relates to the statute of limitations on his state law claims, although this will not assist him if his claims had already lapsed at the time he filed suit in this court.

It is therefore ordered that this court declines to exercise supplemental jurisdiction over plaintiff's remaining two state law claims against the City, and this action will be dismissed without prejudice to plaintiff re-asserting those two claims against the City in state court.[2] A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

**SO ORDERED** this the 13th day of March, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[2] In noting that this order does not prevent plaintiff from re-asserting these two claims in state court against the City, this court does not mean to suggest that such claims would have substantive merit. Moreover, nothing in this order is intended to prevent defendant from arguing that any claims which plaintiff failed to include in his amended complaint are barred from being asserted in state court by *res judicata* and/or collateral estoppel.